PARKENHORN (BARKER v.). See Case No. 993.

## Case No. 10,719.

In re PARKER et al.

[6 Ben. 286.] [1]

District Court, E. D. New York. Dec., 1872.

BANKRUPTCY—PREFERRED DEBTS—TAXES.

Bankrupts occupied land under a lease, in which they covenant to pay the taxes on the land. They failed to pay them, and the lessors paid them: *Held*, that the lessors were not entitled to claim the amount of such payment, as a preferred debt. under the 28th section of the bankruptcy act [of 1867 (14 Stat. 530)].

[In the matter of Parker & Peck, bankrupts.]

## Case No. 10,720.

In re PARKER.

[4 Biss. 501.] [2]

District Court, N. D. Illinois. June, 1868.

BANKRUPTCY—GROUNDS FOR REFUSING DISCHARGE —DEBTS NOT SCHEDULED—INTENTION.

A discharge will not be withheld from a bankrupt for not scheduling property in which he did not at the time know that he had a substantial interest. There must be an intention to conceal the property.

In bankruptcy. Application for discharge. Attorneys for creditors objected that the bankrupt [Renslow S. Parker] had not scheduled certain interests in personal property belonging to his wife before marriage, but which they claimed vested by marriage in the husband. The marriage was in 1859, at which time the wife had about $1,500 in cash in her own right, and which came into his hands soon afterward, and before the passage of the act of 1861. This money he

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]
[2] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

had used from time to time as his wife's and for her benefit.

DRUMMOND, District Judge. The language of the law is, "or if he has concealed any part of his estate or effects, or any books or writings relating thereto." Does not that mean if there was the intention to cover up and conceal property, that the will must have taken part in the effort to conceal? Suppose this man fairly believed, in good faith, that he had not a good right to this property, but that the right was in his wife, whereas, in fact he had the title, what then?

It might well happen that a man would have title to property that he would know nothing about. I apprehend that if he did not schedule it, that would not prevent his discharge in bankruptcy. The assignee can claim the property. The facts as they appear in evidence are these: He was married in 1859. At the time of his marriage his wife had $1,500 in her own right. This came into his hands, subject to his control, in a year after the marriage, apparently before the act of 1861 (1 Gross' St. c. 69a) in relation to married women's property went into operation. He had used this money or property from time to time as his wife's,—that is, for her benefit. That he kept it thus, entirely distinct in all instances from his own property, is his own statement, corroborated, to some extent, by that of his wife; that when he has operated with it he has operated with it as her money; that he did not make any entries in relation to it,—which, by the way, I think he ought to have done,—but he always kept it distinct and separate; that he turned this property or money into assets of various kinds, as bonds or stocks, or anything of that sort, which was evidenced on paper of various kinds; that he turned them over to his wife as her property, and when he wanted to use them again, for the purpose of making some other transaction, he took them and used them in the same way he had previously used the money; that, operating in this way for a series of years, this fund had accumulated some few thousand dollars, and, after it had thus accumulated,—the intent and motive of both parties, as they say, being, to appropriate it to the purchase of a home for themselves,—they purchased property on Wabash avenue, for which they paid about $4,500 cash, the whole purchase price being $9,000.

There may be a very important question, and one, perhaps, not entirely free from difficulty, as to the interest of the bankrupt in that property. The ordinary rule undoubtedly is, or was before the act of 1861, in this state, that the marriage of a woman transferred by operation of law all her personal property to him. But, as I understand this law, in order to prevent the discharge in bankruptcy (because it will be recollected that we are not deciding whether any interest in this property belongs to the assignee or not, but whether the bankrupt has concealed this property) there must have been on his part a voluntary concealment of property; that is to say, he must have had the property, knowing that he had it, and he must have concealed it. The language of the law means to hide, to secrete. I apprehend that there can be no doubt that where a man owns property of which he has no knowledge, as often happens, that the fact that he did not put it in his schedule would not prevent his discharge. There being no other ground of opposition, the discharge will be issued.

Consult In re Shoemaker [Case No. 12,799], and notes to same.